UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA    )  | |
| )  | |
| V.                                                    )  | |
| )  Criminal No: 23-10298-ADB | |
| AKEEM A. LAHENS,                       )  | |
| Defendant.        )  | |

GOVERNMENT'S SENTENCING MEMORANDUM

The United States submits this Sentencing Memorandum to aid the Court in sentencing the defendant, Akeem A. Lahens.

On August 18, 2023, the defendant was charged by criminal complaint with Affecting Commerce by Armed Robbery, in violation of 18 U.S.C. § 1951(a).  Docket No. 2.  On August 23, 2023, the defendant made his initial appearance in federal court, at which the government moved for detention.  The defendant consented to a voluntary order of detention.  Docket No. 6.  On February 2, 2024, the defendant waived his right to an Indictment and pleaded guilty pursuant to a Plea Agreement to an Information charging four counts of Robbery, in violation of 18 U.S.C. § 1951(a).[1]  Docket Nos. 16, 17, and 19.  The defendant's sentencing is scheduled for July 31, 2024.  Pursuant to the terms of the Plea Agreement dated November 15, 2023, the government respectfully requests that the Court sentence the defendant to 77 months of imprisonment, 36 months of supervised release, a $400 special assessment, and restitution in the amount of $1,998.00.

---

[1] The criminal complaint alleged a violation of Affecting Commerce by Armed Robbery, in violation of 18 U.S.C. § 1951(a), the Information alleged four counts of Robbery, in violation of 18 U.S.C. § 1951(a).  Although the charging documents identify the crimes differently, both charge the same offense.

Plea Agreement

In the Plea Agreement, the parties calculated the defendant's Total Offense Level as 24. The Total Offense Level was derived in the following manner:

Defendant's base offense level is 20 (USSG § 2B3.1(a));

Defendant's offense level is increased by 3, because the defendant brandished a dangerous weapon (USSG § 2B3.1(b)(2)(E);

Defendant's offense level is increased by 4, because the defendant committed four armed robberies (USSG § § 3D1.1 and 3D1.4); and

Defendant's offense level is decreased by 3, because the defendant has accepted responsibility for his crimes (USSG § 3E1.1).

The government agreed to recommend a term of incarceration at the low end of the applicable Guideline Sentencing Range, as calculated by the parties in the Plea Agreement. With a Total Offense Level of 24 and a Criminal History Category of IV (see PSR, paragraph 65), the defendant's Guideline Sentencing Range is 77 to 96 months.

Presentence Investigation Report

United States Probation calculated the defendant's Total Offense Level as 29, his Criminal History Category as VI, and his Guideline Sentencing Range as 151 to 188 months. While both the parties and Probation start with a base offense level of 20, Probation added 4 levels pursuant to USSG § 2B3.1(b)(2)(D), because the defendant "otherwise used" a dangerous weapon (the parties added 3 levels because the defendant "brandished" a dangerous weapon).  Probation also added 2 levels, pursuant to USSG § 2B3.1(b)(3)(A), because the defendant caused bodily injury to a victim (the parties did not add that enhancement).  Like the parties, Probation also added 4 levels, pursuant to USSG § 3D1.4, because the defendant committed four robberies.  Lastly, Probation considered the defendant a career offender

pursuant to USSG § 4B1.1(b)(3) and increased the defendant's offense level to 32 (the parties did not include the career offender enhancement). Like the parties, Probation reduced the defendant's offense level for acceptance of responsibility. As Probation considered the defendant a career offender, Probation increased the defendant's Criminal History Category to VI.

The United States carefully considered the career offender enhancement and determined that the defendant did not qualify as a career offender. Robbery is now explicitly enumerated as a crime of violence under the Career Offender guideline. USSG § 4B1.2(a)(2). Here, one of the defendant's prior state convictions counts as a predicate (ADW, conviction on 10/14/16), but his prior state armed robbery conviction does not count as a predicate. The defendant's prior federal convictions are counted as a single sentence even though the robberies were on different dates. USSG §§ 4A1.2(a)(2), 4B1.2(c). Therefore, the defendant appears to have two prior predicate offenses that appear to render him a career offender.

However, the defendant would not have been categorized as a career offender under the prior version of the Guidelines. Every Court of Appeals addressing the issue has held that Hobbs Act robbery is not a "crime of violence" under § 4B1.2, reasoning that neither generic robbery nor the guidelines definition of extortion encompasses threats against property while the Hobbs Act defines "robbery" as, among other things, "the unlawful taking or obtaining of personal property . . . by means of actual or threatened force, or violence, or fear of injury, immediate or future, to his person or property . . . ." *See* 18 U.S.C. 1951(b)(1) (emphasis added); *United States v. Chappelle*, 41 F.4th 102 (2d Cir. 2022) ; *United States v. Scott*, 14 F.4th 190 (3d Cir. 2021); *United States v. Prigan*, 8 F.4th 1115 (9th Cir. 2021); *United States v. Green*, 996 F.3d 176 (4th Cir. 2021); *Bridges v. United States*, 991 F.3d 793 (7th Cir.

2021); *United States v. Eason*, 953 F.3d 1184 (11th Cir. 2020); *United States v. Camp*, 903 F.3d 594 (6th Cir. 2018); *United States v. O'Connor*, 874 F.3d 1147 (10th Cir. 2017).  It should be noted that the analysis comes out differently under 924(c), given that the Guidelines elements clause differs slightly from the 924(c) elements/force clause.  That is, many courts, including the First Circuit, have found that Hobbs Act Robbery is a "crime of violence" under 924(c).  *See, e.g., United States v. Garcia-Ortiz*, 904 F.3d 102 (1st Cir. 2018); *United States v. Buck*, 847 F.3d 267, 274–75 (5th Cir. 2017); *United States v. Gooch*, 850 F.3d 285, 292 (6th Cir. 2017); *United States v. Fox,* 878 F.3d 574, 579 (7th Cir. 2017); *United States v. Melgar–Cabrera*, 892 F.3d 1053 (10th Cir. 2018).

Given that the conduct in this case predates the 2023 amendments to the Guidelines, Lahens would not be categorized as a career offender.  "Application of a version of the Sentencing Guidelines adopted after an offense is committed violates the Ex Post Facto Clause where the newer Guidelines result in a higher GSR than the version in effect at the time the offense was committed."  *United States v. Mantha*, 944 F.3d 352, 354 (1st Cir. 2019) (citing *Peugh v. United States*, 569 U.S. 530, 549-50 (2013) and *United States v. Booker*, 543 U.S. 220, 245 (2005)).]

Argument

The United States respectfully asks the Court to impose a sentence of 77 months of imprisonment, the low end of the Guideline Sentencing Range as calculated by the parties in the Plea Agreement.  While the Court is free to impose a sentence greater or lesser than the jointly recommended sentence, the United States believes that a sentence that includes 77 months of imprisonment is appropriate.

A review of the sentencing factors articulated in 18 U.S.C. § 3553(a) support a sentence of 77 months of imprisonment.  A lesser period of incarceration would undermine the public's confidence in the courts and the criminal justice system, not adequately protect the community from the defendant, and would not deter the defendant and others from committing the same crimes.

The Defendant's Criminal Record

The defendant's record is atrocious.  In 2012, at the age of 22, the defendant received a continuance without a finding in the Dorchester District Court for resisting arrest and assault and battery on a police officer.  PSR, Paragraph 60.  In 2015, at age 25, the defendant received a sentence of imprisonment of 2 years to 2 years and 1 day followed by 2 years of probation in the Suffolk Superior Court after his conviction for armed robbery (knife), assault by means of a dangerous weapon (knife) and witness intimidation.  In the 2015 case, the defendant robbed a Boost Mobile store at knifepoint in Mattapan.  PSR, paragraph 61.  In 2020, at age 30, the defendant received a sentence of 30 months of imprisonment followed by 3 years of supervised release in the federal court in New York.  In that case, the defendant pleaded guilty to 5 counts of Hobbs Act robbery, but actually committed approximately 15 robberies between June 2020 and November 2020.  PSR, paragraph 62.

The defendant's numerous robberies in New York occurred in mobile phone stores and involved the use of a knife. It is particularly troubling that in the case now before this Court, the defendant returned to the same criminal behavior that landed him in federal prison after his New York conviction.  The 30 months in federal prison has had no effect on the defendant's behavior.  The defendant was still on supervised released when he committed the four-armed robberies for which he now faces sentencing.

The Four Charged Robberies

In all four of the robberies for which the defendant will be sentenced, the defendant brandished two large knives. In the first robbery, the defendant ordered the store clerk into the store's bathroom before fleeing the store. One can only imagine the terror the victim clerk must have felt as the defendant brandishing two large knives escorted her to the back of the store.

In the second robbery, the defendant held the two knives to the hip of the clerk and stated, "I'm having a bad fucking day, give me all the cash." The defendant then forced the victim clerk to the back of the store where he made her open the safe. When the victim clerk resisted the defendant's efforts to push her into the store's bathroom, the defendant punched her in the face. The victim clerk was later transported to the hospital by ambulance because of the facial injury inflicted on her by the defendant.

In the third robbery, the defendant threatened the store clerk with two large knives and forced the victim clerk into the store's bathroom.

In the fourth robbery, the defendant took two large knives from his backpack, bounded over the counter, and while holding the knives to the one of the victim clerk's lower back ordered the victim clerk to open the cash register. The defendant threatened "[i]f you don't open the register, I'm going to kill you." After collecting the money, the defendant ordered the three-victim clerks present into the store's bathroom.

While the four robberies happened during a relatively short period of time (between April 21, 2023 and May 4, 2023), the defendant's use of knives, threats, and physical violence signify that the defendant is an extremely dangerous person. The fact that the four robberies occurred while the defendant was on federal supervised release for having committed

essentially the same crime on numerous previous occasions is convincing evidence that the defendant learned nothing from his previous term of imprisonment and is unlikely to be deterred from committing dangerous crimes in the future.

Defendant's Background

There is no question that the defendant has had an incredibly difficult life. The defendant was abandoned as a child, physically and sexually abused, and suffers from addiction. No child or adult should have to endure the difficulties that the defendant has faced throughout his life. The unfortunate reality is that there is nothing that the Court can do to change the defendant's past. How should the Court weigh the difficulties faced by the defendant when determining an appropriate sentence? The defendant's difficult upbringing is not mitigation for his crimes. The defendant's difficult past is not justification or even an explanation for his crimes. While the defendant may choose to seek the professional help to come to terms with his past, the Court must assess the defendant's danger to the community, the likeliness of the defendant reoffending upon his release from federal prison, and impose a sentence that reflects the seriousness of the defendant's crimes.

Conclusion

The defendant committed four armed robberies threatening store clerks in each instance with two large knives. In one of the robberies, he punched a female clerk in the face resulting in injuries that required hospital attention. In one of the robberies, the defendant threated to kill the clerk victims if the clerk did not comply with his orders. All of this happened while the defendant was on supervised release after having committed approximately fifteen similar robberies in New York. The defendant is a dangerous person and poses a significant threat to the community. While we all hope that another period of

incarceration will convince the defendant to abandon his criminal ways, the Court cannot risk the safety of the community on a such a hope. The United States asks the Court to impose a sentence of 72 months, three years of supervised release, a $400 special assessment, and to pay restitution in a total amount of $1,998.00.

                                                Respectfully submitted,

                                                JOSHUA S. LEVY
                                                Acting United States Attorney

                            By:    */s/ David G. Tobin*
                                   DAVID G. TOBIN
                                   Assistant U.S. Attorney

<u>CERTIFICATE OF SERVICE</u>

      This is to certify that I have this day served a copy of the foregoing upon all counsel of record by electronic filing notice.

                                            */s/ David G. Tobin*
                                            DAVID G. TOBIN
                                            Assistant U.S. Attorney