UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v.                                          ) | 1:23-cr-10298-ADB |
| ) | |
| ) | |
| AKEEM LAHENS                  ) | |

**<u>DEFENDANT'S MEMORANDUM IN AID OF SENTENCING</u>**

Akeem Lahens is still suffering from the legacy of his childhood. Placed into foster care at birth, he was adopted at four years old, but then subjected to horrific physical abuse by his adoptive mother. PSR ¶ 77. When he was later removed from that abusive home and placed in the care of his aunt, he was again abused. Id. By the time he was placed into an actually supportive foster home when he was 12, he was already permanently scarred by his experiences as a young child. He suffered from Post-Traumatic Stress Disorder, at times required inpatient psychiatric care, and was placed on medication. PSR ¶ 78. As human beings often do, he blamed himself for the ways he had been treated. PSR ¶ 93. Even while still in elementary school, he attempted suicide multiple times. PSR ¶ 94. These thoughts have never really left him, as he made another suicide attempt as recently as 2022 while serving a prior sentence. Id.

Akeem Lahens lived a life that no child deserves, and the pain he suffered expressed itself in his behavior. He began using alcohol and marijuana when he was 18, PSR ¶ 97, and progressed to heroin when he was 24 and PCP when he was 25. PSR ¶ 99. Most recently he added fentanyl to his regimen of self-medication. Id. Along with using substances, he started picking up court

cases when he was 18. PSR ¶ 69. He committed crimes that resulted in convictions in his 20s and into his 30s. PSR ¶¶ 60-62. Each time he was released he eventually relapsed and returned to crime to support his habit. PSR ¶¶ 97-101. The cycle has not yet been interrupted.

Akeem Lahens recognizes that his own trauma has led him to inflict trauma on others. He has pled guilty to four robberies in this case and acknowledges that his conduct and his history call for a sentence longer than any he has served before. He has three prior sentences, only two of which included incarceration, the longest period being 30 months. PSR ¶¶ 60-62. Mr. Lahens now recommends a sentence twice as long for his conduct in this case- 60 months incarceration to be followed by 3 years supervised release. He also recommends a 6-month consecutive sentence for the supervised release violation that is also before this court, for a total period of incarceration of 66 months. Mr. Lahens submits that under all the particular circumstances of this case, 66 months total incarceration is "sufficient, but not greater than necessary" to accomplish all the goals of sentencing. 18 U.S.C. § 3553(a).

I. **Although Mr. Lahens failed after his most recent release, he has demonstrated an ability to succeed in the past.**

Mr. Lahens acknowledges that he committed these offenses only a few months after he began the supervised release from his prior case. Although supervised release began in February 2023, PSR ¶ 62, he had already been placed at a Connecticut halfway house for the last few months of his term of incarceration. Even though Mr. Lahens had never previously lived in Connecticut he was placed there based on his plan to reside with his then-girlfriend. PSR ¶ 87. Yet that relationship had only begun in July 2020, just five months before he was arrested in the prior case. PSR ¶¶ 62, 87. Given that Mr. Lahens committed the prior robberies during the brief period

of this relationship, its clear that it did not provide the stability that he needs in general, let alone during the particularly vulnerable transition period after leaving prison. Not surprisingly, the relationship did in fact become strained shortly after his return. PSR ¶ 87.

Mr. Lahens in no way blames his ex-girlfriend for his crimes. However, in hindsight it is clear that releasing to a new area based only on a five-month relationship from several years earlier was not a viable plan. Indeed, he reports that he began using substances almost immediately upon his release to the halfway house. PSR ¶ 99. This was the first time in his life he used fentanyl, and he returned to using PCP as well. Id. Given his significant needs, Mr. Lahens clearly needs a better plan next time.

Fortunately, Mr. Lahens has shown the ability to succeed under different circumstances. For a 2.5 year period, from January 2018 until June 2020, he abided the law and maintained employment. In January 2018 he released from a two-year state sentence to a period of 2 years state probation. PSR ¶ 61. In that instance he released to the Boston area, which allowed him to receive support from his most stable and loving family members- his foster mother Audrey Grant and her children. PSR ¶¶ 79, 82, 85. In January 2020 he successfully completed his probation on the original termination date. PSR ¶ 61. He was employed at fast food restaurants from 2018 until 2020. PSR ¶ 106. His ability to maintain employment and comply with probation demonstrates that he also maintained his sobriety. Mr. Lahens had shown the ability to change his behavior.

The decline from that period of stability began with the onset of the global COVID-19 pandemic in March 2020. He lost his job when the restaurant where he worked was forced to close. He reports being unable to quickly access government pandemic relief because of the

difficulty in providing acceptable forms of identification due to a life lived in foster care. The financial and emotional strain of quarantine in turn put great stress on his relationship and the couple soon separated. PSR ¶ 86. Due to these personal and global crises, he relapsed, leading to the commission of the crimes in the prior federal case beginning in June 2020. PSR ¶ 62.

When Mr. Lahens releases after the completion of the sentence the Court will impose in this case, he will do so under the more supportive circumstances that led to his 2.5 year period of success from 2018 to 2020. He will come home to the area he knows and the family that loves and supports him. Both his foster mother and foster brother wrote heartfelt letters of support for Mr. Lahens in the New York case. Exhibit A, Letters of Support. Counsel has spoken to his mother and brother and both remain very supportive of him. Christian Grant, Mr. Lahen's brother, noted that the period from 2018 to 2020 when Mr. Lahens had the most success was the period when they were in contact with him most frequently. When Mr. Lahens returns home in the future, he will also not be returning to an unstable romantic relationship. He likely will also have had the opportunity to complete the Bureau of Prisons' Residential Drug Abuse Program (RDAP). Although his addiction history was well known during his last incarceration, there was not enough time left on his 30-month sentence by the time he was designated to allow him to enter the program. PSR ¶ 62 (describing BOP programming, which did not include RDAP). Of course Mr. Lahens will be older and coming off a much longer sentence. All of these differences suggest that Mr. Lahens will have a much better chance of succeeding the next time he is released. While the 30-month prior sentence followed by release to a new area and an unstable relationship resulted in a short time to relapse and reoffense, a total 66-month sentence with the ability to participate in RDAP and release to his home and supportive family will both

accomplish the goals of sentencing and put him in a good position to succeed in the way he did following the state sentence.

## II.     Akeem Lahens still carries his trauma with him, resulting in a need for continued mental health and substance abuse treatment.

Akeem Lahens' childhood trauma is horrific and fully documented in the Presentence Report. PSR ¶¶ 77-81, 92-95. The path from that trauma to serious substance abuse and then to criminal behavior is both direct and clear. See PSR ¶¶ 59-75, 97-101. No amount of incarceration will heal the underlying conditions that drove Mr. Lahen's offending. Despite the presence of some rehabilitation programs, incarceration is fundamentally designed for incapacitation and punishment. Indeed, it is a place where suicide attempts result in disciplinary infractions. PSR ¶ 62.

The effects of PTSD are experienced long after the precipitating trauma. That means that even during periods of success, individuals with PTSD still struggle with feelings of shame, sadness, and anger from the traumatic events. A psychological evaluation of Mr. Lahens was prepared in 2021 as part of the prior New York federal case. The defense has submitted that report again here to provide additional information about the connections between Mr. Lahens' trauma, mental health, substance use, and criminal history. Exhibit B, Psychological Report (submitted under seal). In the report, the evaluator notes the long-term effects of PTSD:

> Of note, it is not essential for the individual to reexperience traumas to be affected by the combined symptoms of PTSD and substance abuse. Risk factors that contribute to relapse are inherent in the diagnosis of PTSD, including negative emotional states and negative physiological responses. Mr. Lahens appears to demonstrate this as he continually used substances which he uses as [a] maladaptive coping strategy, which also contributes heavily to maladaptive behaviors in obtaining these substances.

Exhibit A, Confidential Psychological Report of Dr. Edward Fernandez, p.9.

In his report, the evaluator recommends that Mr. Lahens' mental health treatment specifically include trauma-focused cognitive behavioral therapy. Counsel is aware that the probation department regularly employs cognitive behavioral therapy, meaning that Mr. Lahens will have the opportunity to participate in the specific kind of treatment he needs.

Mr. Lahens' serious history of trauma does not mean that he should not be punished for his offenses. As noted before, he allowed his trauma to lead him to commit traumatic acts against others. Rather, his history of trauma and the ways to treat it are relevant to the Court's determination of the length of sentence. In this case, punishment and protection of the public justify a sentence that is more than twice as long as any previous sentence Mr. Lahens has previously served. A total sentence of 66 months incarceration will accomplish some goals of sentencing. However, other goals of sentencing, notably rehabilitation and future protection of the public, can only be accomplished through specific treatment and supervision.

**III.     Mr. Lahens swiftly and fully accepted responsibility in this case.**

Akeem Lahens was arrested for these crimes on May 5, 2023 and first prosecuted in state court. PSR ¶ 1. His initial appearance in the federal case was on August 23, 2023, at which time he promptly consented to an order of voluntary detention. Dkt. 6, 9. At that point he was charged with three robberies by complaint. Dkt. 2. Less than three months later he had agreed to waive his right to Indictment and plead guilty to an Information charging the four robberies he committed. Dkt. 12. Mr. Lahens did not seek release nor put the government to its burden of

proof at trial nor even to obtain an Indictment from the grand jury. Instead, he waived those rights and agreed to plead guilty pursuant to a plea agreement. Dkt. 16. He also sought the assistance of the probation department in transferring the supervised release violation from the prior New York case to the District of Massachusetts so that it could be resolved efficiently.  See 24-cr-10086-ADB. Mr. Lahens agrees that additional punishment is appropriate for that case and recommends an additional six months of incarceration.

Under the plea agreement in the new case, the parties agreed to an offense level three levels lower than the probation department has determined. Where the parties agreed that Mr. Lahens had a total offense level of 24, the probation department determined it to be 27. For two of the robberies the probation department agreed with the calculation of the parties. For the other two, the probation department applied one slightly different enhancement and one additional one. On two occasions the probation department determined that Mr. Lahens' positioning of the knives crossed over from having "brandished" them to having "otherwise used" them, resulting in a one-point increase from 3 to 4 levels. USSG § 2B3.1(b)(2)(D). For one of the robberies the probation department determined that the victim suffered bodily injury because Mr. Lahens struck her in the face with his hand, resulting in an additional two-point increase. USSG § 2B3.1(b)(3)(A).

Mr. Lahens previously objected to those additional enhancements, but now withdraws the objections. The objections were submitted in order to allow the provision of additional discovery that addressed the enhancements rather than any attempt to minimize the seriousness of the offenses. Although the probation department determined a higher offense level, the parties'

calculation in the plea agreement was reasonable because it accounted for the brandishing of the weapons and for the number of robberies.

As to his criminal history, Mr. Lahens submits that he should receive a total of eight criminal history points and be placed in Criminal History Category IV. Both of his prior robbery convictions receive three criminal history points because the sentences were each longer than 13 months. However, none of the convictions from the Southern District of New York for Hobbs Act Robbery earn additional points as crimes of violence under the version of the guidelines that was in effect at the time of the conduct in this case. In Amendment 822, effective November 1, 2023, the Sentencing Commission amended the definition of crimes of violence in § 4B1.2 to include a definition of robbery that conformed with Hobbs Act robbery. As the government has noted in its Sentencing Memorandum, prior to the 2023 Amendment every Court of Appeals that had addressed the issue had held that Hobbs Act robbery did not qualify as a crime of violence. See Amendment 822, Reason for Amendment. Where use of the Guidelines version in effect at the time of sentencing would violate the *ex post facto* clause of the Constitution, the Court should use the version in effect at the time of the conduct. USSG § 1B1.11. In this that requires use of the prior version of the guidelines and in turn a determination that the Hobbs Act robbery convictions from the Southern District of New York do not qualify as crimes of violence under that version. However, when applying a prior version of the guidelines so as to avoid an *ex post facto* violation, the entire prior version of the guidelines should apply. USSG § 1B.11(b)(2). Applying the 2022 guidelines, Mr. Lahens would receive two additional points for committing the offense while under a criminal justice sentence, resulting in a total of eight and placing him

in Criminal History Category IV. The advisory range for offense level 27 in Category IV is 100-125 months.

To the extent that the guidelines recommend a sentence higher than recommended by either the defense or the government, the defense submits that the guidelines cannot possibly account for the particular circumstances of this case, including Mr. Lahens' severe trauma, treatment needs, the circumstances of his most recent, unsuccessful release, and the swiftness of his acceptance of responsibility.

### IV.     Conclusion

Akeem Lahens committed serious crimes and he now recommends a serious consequences. For all the reasons argued above, 60 months incarceration, to be followed by a six month consecutive sentence for the supervised release violation, to be followed by three years of supervised release, is a sufficiently serious sentence that is not greater than necessary to achieve the goals of sentencing.

> Respectfully submitted,
> AKEEM LAHENS
> by his attorney
>
> *Joshua Hanye*
> Joshua Hanye, BBO#661686
> FEDERAL PUBLIC DEFENDER OFFICE
> 51 Sleeper Street, 5th Floor
> Boston, MA 02210
> 617-223-8061

**Certificate of Service**

I, Joshua R. Hanye, hereby certify that this document was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF").

Date: July 26, 2024                           */s/ Joshua R. Hanye*
                                              Joshua R. Hanye